# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| VALENTIN BELEVICH, ) )  Plaintiff, ) ) vs. ) ) KLAVDIA THOMAS & TATIANA ) KUZNITSYNA, ) )  Defendants. ) | Civil Action Number **2:17-cv-01193-AKK** |

## MEMORANDUM OPINION AND ORDER

This action arises out of a contract dispute involving the purported breach of an obligation created by the Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq.*, and a related state law claim for the intentional infliction of emotional distress.  Klavdia Thomas and Tatiana Kuznitsyna (the Defendants) have now filed a motion to dismiss, which the court construes as brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that the court should abstain from exercising subject matter jurisdiction over this case because of an ongoing divorce proceeding between Tatiana Kuznitsyna and the Plaintiff, Valentin Belevich, in the Circuit Court of Jefferson County, Alabama.  Doc. 6.  That motion is now fully briefed, docs. 10 and 13, and ripe for review.  After carefully considering the

parties' briefs and the record, the court finds that the Defendants motion is due to be denied.

## I. FACTS

Belevich and Kuznitsyna, a married couple with Russian citizenship, sought to immigrate to the United States in 2009. Doc. 1 at 3. Kuznitsyna's daughter Klavdia Thomas, a citizen of the United States, sponsored Kuznitsyna and the Department of Homeland Security approved Kuznitsyna's visa request in 2010. *Id.* at 4. Kuznitsyna and Thomas then jointly sponsored Belevich's immigration by co-signing an I-864 Affidavit of Support pursuant to § 213A of the Immigration and Nationality Act, 8 U.S.C. § 1182a, on his behalf and promptly filing the document with the Department of Homeland Security. *Id.*; *see also* 8 C.F.R. § 213a.2(a)(1)(ii). An affidavit of support is required for certain categories of immigrants to become lawful permanent residents. 8 U.S.C. § 1182(a)(4)(C). The affidavit must be "executed by a sponsor of the alien as a contract . . . in which the sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty level during the period in which the affidavit is enforceable." 8 U.S.C. § 1183a(a)(1)(A). Notably, the affidavit does not terminate on divorce, doc. 1-1 at 24, and lasts until the alien becomes a naturalized citizen of the United States or "has worked 40 qualifying quarters of coverage as defined under title II of the Social Security Act." §

1183a(a)(2)–(3). The Department of Homeland Security subsequently granted Belevich a visa allowing him to immigrate to Alabama in 2012. Doc. 1 at 4.

Neither Belevich nor Kuznitsyna spoke English when they arrived in the United States rendering them entirely dependent on Thomas for guidance and support. *Id.* Indeed, among other things, Belevich allowed Thomas to liquidate the couple's Russian real property before he immigrated and he also wired Thomas approximately $15,000 which she used to purchase and furnish a home for the couple. *Id.* Once he arrived in Alabama, Belevich turned his other financial assets over to Thomas, and he exclusively relied on a credit card Thomas provided for his living expenses. *Id.* Belevich also surrendered the wages he earned at a variety of jobs, including a full-time position as an auto-mechanic, to Thomas. *Id.* at 5.

In late 2014, Belevich suffered a heart attack and subsequently lost his job. This created a financial hardship for the family and strained the parties' relationship. *Id.* During his recovery, Belevich temporarily returned to Russia to care for his ailing mother. *Id.* Allegedly, Thomas then sought to prevent Belevich's return to the United States by cancelling his credit card, cell phone, and return ticket. *Id.* While in Russia, Belevich purportedly also learned that Thomas had emptied his retirement accounts and liquidated his remaining Russian assets without his knowledge. *Id.* These events allegedly caused Belevich to suffer a second heart attack. *Id.* at 6.

After his condition stabilized, Belevich contacted his wife who informed him that she was seeking a divorce and that he was no longer welcome in the couple's home. *Id.* Belevich borrowed money from friends to return to the United States, but, true to her word, Kuznitsyna initiated divorce proceedings against him. *Id.* Those proceedings are still ongoing. *Id.* at 7. Belevich alleges that since his return in 2015 neither Kuznitsyna nor Thomas have complied with their obligations under the I-864 Affidavit of Support, forcing Belevich to rely on government benefits and charity to survive. *Id.* at 5–7. Accordingly, Belevich filed this action requesting specific performance of the Defendants' contractual obligations, compensatory damages for past support, and damages for the intentional infliction of emotional distress. *Id.* at 8–9.

## II. STANDARD OF REVIEW

The Defendants do not specify whether their motion, seeking dismissal under the *Younger* abstention doctrine, is filed under Rule 12(b)(6) or Rule 12(b)(1) of the Federal Rules of Civil Procedure. Generally, however, challenges to subject matter jurisdiction are cognizable via Rule 12(b)(1). Such a motion may take the form of a facial or factual attack. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A facial attack "'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction" taking "the allegations in [the]

complaint . . . as true.'" *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). On the other hand, a factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered." *Id.* (quoting *Lawrence*, 919 F.2d at 1529). Accordingly, when resolving a factual attack on jurisdiction, the court may hear conflicting evidence and decide the factual issues bearing on jurisdiction. *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991).[1] Here, the central issue bearing on the abstention question is the status of a parallel state court divorce proceeding which is not incorporated by the complaint. Thus, the court considers the Defendants' motion as a factual attack filed pursuant to Rule 12(b)(1).[2]

---

[1] This represents the major difference between a motion decided under Rule 12(b)(6) and under Rule 12(b)(1). In the Rule 12(b)(6) context, the court generally may not consider documents outside the pleadings without converting the motion into a Rule 56 motion for summary judgment. *See Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006). The other distinction is that in the context of a factual attack on jurisdiction, the district court may "serve as the fact-finder and may weigh the evidence, provided that the challenge to subject matter jurisdiction does not implicate an element of the cause of action." *Scarfo v. Ginsburg*, 175 F.3d 957, 961(11th Cir. 1999). Neither distinction is implicated here. First, "[a] district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment." *Universal Express*, 177 F. App'x at 53. "Relevant public documents" are among the categories of facts this court may appropriately notice without converting a motion to dismiss into a motion for summary judgment. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999). Thus, whether the court proceeds under Rule 12(b)(1) or Rule 12(b)(6), it may consider the various filings in the underlying state court litigation. Second, the court is not asked to decide any factual questions bearing on the abstention issue because the parties agree that divorce proceedings between Belevich and Kuznitsyna are ongoing in state court. Accordingly, the proper characterization of the Defendants' motion is purely academic and does not alter the court's decision making process.

[2] In making this determination, the court follows the lead of other district courts in this circuit who have applied Rule 12(b)(1) to motions seeking dismissal on the basis of *Younger* abstention.

## III. DISCUSSION

The parties agree that this case involves a federal question, and subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331. Nonetheless, because of ongoing divorce proceedings in state court, the Defendants contend that this court should apply the doctrine first announced in *Younger v. Harris*, 401 U.S. 37 (1971) and abstain from the case in favor of the litigation in state court. As a general rule, "federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction except in those extraordinary circumstances 'where the order to the parties to repair to the State court would clearly serve an important countervailing interest.'" *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976)). In *Younger*, however, the Supreme Court recognized that a limited exception to this obligation existed when "'extraordinary circumstances' counsel[ed] abstention in favor of pending state proceedings." *Seminole Tribe of*

---

*See, e.g.*, *Parker v. Judicial Inquiry Comm'n of the State of Ala.*, 212 F. Supp. 3d 1171, 1174–75 (M.D. Ala. 2016); *Fairfield Cmty. Clean Up Crew, Inc. v. Hale*, No. 2:17-cv-00308, 2017 WL 4865545, at *2 (N.D. Ala. Oct. 27, 2017). However, *Younger* appears to reflect a district court's "prudential decision not to exercise jurisdiction which it in fact possesses," *Weekly v. Morrow*, 204 F.3d 613, 614–15 (5th Cir. 2000) (quotation omitted), an insight the Eleventh Circuit has appeared to affirm. *See Falanga v. State Bar of Ga.*, 150 F.3d 1333, 1335 n.2 (11th Cir. 1998) (stating "it appears that '*Younger* abstention is *not* jurisdictional'") (emphasis original) (quoting *Benavidez v. Eu*, 34 F.3d 825, 829 (9th Cir. 1994)). In any event, the parties do not argue over the form of the motion, and, as the court has explained, this characterization is merely academic. Because there are no disputed factual issues that the court must resolve, whether the motion is brought under Rule 12(b)(6) or Rule 12(b)(1), the court accepts "the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Hunt v. Aimco Props., L.P.* 814 F.3d 1213, 1221 (11th Cir. 2016).

*Fla. v. Stranburg*, 799 F.3d 1324, 1344 n.15 (11th Cir. 2015) (citation omitted). Thus, although the federal government may be anxious "to vindicate and protect federal rights and federal interests . . . [it must] do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger*, 401 U.S. at 44.

As a threshold matter, this court must first determine whether the underlying state proceedings fall into one of the three *Younger* categories of "exceptional circumstances" justifying abstention: (1) "state criminal prosecutions;" (2) "civil enforcement proceedings;" or (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 368 (1989) (*NOPSI*); *see also Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 594 (2013) (clarifying that "*Younger* extends to the three 'exceptional circumstances' identified in *NOPSI*, but no further"). Once the court is satisfied that the underlying litigation falls into the *Younger* taxonomy, the following three factors (the *Middlesex* factors) guide the inquiry into whether the particular circumstances of the case demand abstention: (1) "do . . . [the underlying proceedings] constitute an ongoing state judicial proceeding;" (2) "do the [underlying] proceedings implicate important state interests;" and (3) "is there an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432

(1982); *see also 31 Foster Children v. Bush*, 329 F.3d 1255, 1274–75 (11th Cir. 2003) (applying the *Middlesex* factors to determine whether *Younger* abstention is proper). *Younger* abstention is appropriate only when all three of the *Middlesex* factors are met. *See, e.g.*, *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83,100–01 (2d Cir. 2004); *31 Foster Children*, 329 F.3d at 1274–75; *Watson v. Fla. Judicial Qualifications Comm'n*, 618 F. App'x 487, 490 (11th Cir. 2015) (explaining that all three *Middlesex* factors must be met before *Younger* applies). "While non-abstention remains the rule, the *Younger* exception is an important one . . . [deriving] from 'the vital considerations of comity between the state and national governments.'" *31 Foster Children*, 329 F.3d at 1274 (quoting *Luckey v. Miller*, 976 F.2d 673, 676 (11th Cir. 1992)).

For purposes of this motion only, the court assumes that the underlying divorce proceeding qualifies as an "exceptional circumstance" potentially justifying abstention under *Younger*.[3] Turning next to the application of the

---

[3]The parties also appear to assume that the underlying divorce proceedings qualify as an exception circumstance. The court, on the other hand, is not entirely convinced. A divorce proceeding is clearly neither a criminal action nor a state enforcement proceeding. Thus to fall into a category of litigation susceptible to *Younger* abstention principles, it must qualify as a "civil proceeding[] involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *NOPSI*, 491 U.S. 368. There is a dearth of Eleventh Circuit case law applying the *Younger* taxonomy after the Supreme Court clarified in *Sprint Communications* that abstention was only appropriate for cases falling within the three categories expressly delineated in *NOPSI*. Prior to *Sprint Communications*, however, the Eleventh Circuit did affirm several decisions applying *Younger* in the domestic context. *See Cormier v. Green*, 141 F. App'x 808, 814 (11th Cir. 2005) (finding that the district court did not abuse its discretion in applying *Younger* abstention to a Georgia divorce proceeding); *Davis v. Self*, 547 F. App'x 927, 930 (11th Cir. 2013) (finding that district court did not err in applying *Younger* abstention in

8

*Middlesex* factors, the court notes initially that the parties accept that the underlying divorce proceeding implicates an important state interest, marital relations, thereby satisfying the second *Middlesex* factor. *See Ex parte Burrus*, 136 U.S. 586, 593–94 (1890) (observing that "[t]he whole subject of the domestic relations of husband and wife . . . belongs to the laws of the states and not to the laws of the United States"). The parties' dispute focuses on the first and third *Middlesex* factors. More specifically, the Defendants contend that the litigation in this court poses a risk of undue interference with the intertwined state court divorce proceedings, and that Belevich's claim can be fully litigated in state court. The court disagrees with the Defendants that the first *Middlesex* factor, whether there is an ongoing state judicial proceeding, weighs in favor of abstention. As a result, the court does not address the third *Middlesex* factor.

---

a case "involving domestic relations and child custody"). Although states traditionally have a strong interest in divorce and custody proceedings, *see, e.g.*, *Mansell v. Mansell*, 490 U.S. 581, 587 (1989) (explaining that "domestic relations are preeminently matters of state law"), such proceedings do not appear to involve orders critical to the state court's ability to perform its judicial function. *See Dandar v. Church of Scientology Flag Serv. Org., Inc.*, 619 F. App'x 945, 948 (11th Cir. 2015) (identifying the enforcement of a settlement order in state court as an attempt for the state court "to protect the viability of its mediation system" and thus critical for the state court to perform its judicial function). Instead, the proceedings falling into this category mostly deal with the ability of a state court to enforce particular orders or with alterations in the procedural mechanisms the state court has developed to resolve disputes. *See Id.* at 948–49 (collecting cases finding that abstention is appropriate when a federal court would interfere with the state court's administration of its duties or ability to enforce its orders). In any event, this court need not conclusively resolve this quandary because, even assuming that a divorce proceeding constitutes an exceptional circumstance, the *Middlesex* factors do not justify abstention.

## A. Ongoing State Judicial Proceedings

There is no question that the divorce proceeding underlying this case is ongoing in state court. But, the court's inquiry does not end there. Instead, Eleventh Circuit precedent provides "that an essential part of the first *Middlesex* factor in [the] *Younger* abstention analysis is whether the federal proceeding will interfere" with the proceeding in state court. *31 Foster Children*, 329 F.3d at 1276. "If there is no interference, then abstention is not required." *Id.* To determine "whether the federal proceeding would interfere with the state proceeding," the court considers "the relief requested and the effect it would have on the state proceedings." *Id.*

Notably, the federal court proceeding need not "terminate an ongoing [state] proceeding" to qualify as interference. *Watson*, 618 F. App'x at 490. Instead, "'*Younger* governs whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly.'" *31 Foster Children*, 329 F.3d at 1276–77 (quoting *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002)). The touchstone of this inquiry is whether "the requested federal relief would result in meticulous and burdensome federal oversight of state court or court-like functions." *Wexler v. Lepore*, 385 F.3d 1336, 1340 (11th Cir. 2004). Thus, the Eleventh Circuit has interpreted "the *Younger* doctrine as preventing federal courts

from being the grand overseers . . . [or] supervisor[s] of state litigation or the state court." *Id.* at 1341. The general rule remains, however, that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Ambrosia Coal & Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004) (quotation omitted).

Here, the court does not doubt that a decision regarding the enforceability of the I-864 Affidavit of Support rendered in this action could have a practical effect on the underlying divorce proceedings, particularly with respect to potential alimony payments and the state court's division of marital assets between Belevich and Kuznitsyna. However, the tangential overlap between state and federal proceedings, including the existential possibility of some interaction between the two, is a far cry from the "meticulous and burdensome federal oversight" of state court proceedings constituting undue interference under *Younger*. *Wexler*, 385 F.3d at 1340. In this federal action, Belevich seeks only the enforcement of an obligation existing separately from his marriage and familial relationships. He does not seek an injunction restraining the divorce proceedings in state court or relief from an order or judgment entered against him pursuant to state law. Indeed, the obligation at issue here has nothing to do with Belevich's marital status, and it would not require this court to serve as a "grand overseer" of the underlying state court divorce proceedings.

11

At most, enforcement of the I-864 Affidavit of Support obligations could partially duplicate or otherwise influence the state court's ultimate division of marital property in the underlying divorce proceeding. However, it is well settled that a federal proceeding "may . . . affect, or for practical purposes pre-empt, a future—or, as in the present circumstances, even a pending—state-court action" without triggering *Younger*. *NOPSI*, 491 U.S. at 373. Put another way, "the mere possibility of inconsistent results," between parallel federal and state litigation, "is insufficient to justify *Younger* abstention." *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 71 (1st Cir. 2005); *see also Wexler*, 385 F.3d at 1341 (explaining that *Younger* abstention requires "undue interference" not simply a practical relationship between federal and state proceedings). Thus, even if the Defendants are correct that the enforceability of the I-864 Affidavit of Support is "part and parcel" of the issues before the state court, that argument, standing alone, is still insufficient to justify abstention. *See Ambrosia Coal & Constr. Co.*, 368 F.3d at 1328. Because this case is only tangentially related to the underlying state court litigation, the court finds that maintaining the federal case will not unduly interrupt or otherwise interfere with the state court action. As a result, *Younger* abstention is inappropriate and the court need not separately address the third *Middlesex* factor involving the adequacy of the state forum. *See 31 Foster*

*Children*, 329 F.3d at 1276 (holding "[i]f there is no interference, then abstention is not required").

## IV.    CONCLUSION AND ORDER

For the foregoing reasons, the court concludes that *Younger* abstention is not justified by the mere presence of a parallel divorce proceeding in state court. This court's exercise of jurisdiction "merely preserves the federal forum for federal claims raised by [a] plaintiff[] in a federal proceeding." *Wexler*, 385 F.3d at 1341. It does not represent a federal takeover of the issues presented in the underlying case nor would it have the practical effect of ending or dictating the final outcome of that proceeding. Therefore, because "there is no doctrine that the availability or even the pendency of state judicial proceedings excludes the federal courts," *NOPSI*, 491 U.S. at 359, the Defendants' motion, doc. 6, is **DENIED**. The Defendants have 21 days from the entry of this order to serve an answer, as required by Rule 12(a) of the Federal Rules of Civil Procedure.

**DONE** the 9th day of March, 2018.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE