UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| VALENTIN BELEVICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Civil Action Number |
| KLAVDIA THOMAS and | ) | 2:17-cv-1193-AKK |
| TATIANA KUZNITSNYNA, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Valentin Belevich brings this action against Klavdia Thomas and Tatiana Kuznitsnyna ("the Defendants") under the Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq.* ("INA") for breach of contract and intentional infliction of emotional distress. Doc. 1. The Defendants have asserted counterclaims of extortion, misrepresentation, fraud, and conversion. Docs. 23, 25. Belevich has moved to dismiss these counterclaims for failure to state a claim on which relief can be granted, doc. 29, and the motion is ripe for review. For the reasons stated more fully below, the motion is due to be granted.

**I. STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual

1

allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). By contrast with Rule 8(a)'s fairly liberal pleading standard, Federal Rule of Civil Procedure 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake." This means the claimant must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [claimants]; and (4) what the [opposing party] gained by the alleged fraud." *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a claim or counterclaim when a pleading fails to state a claim upon which relief can be granted. To survive a motion to dismiss counterclaims, the pleadings "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted); *see, e.g.*, *Geter v. Galardi South Enterprises*, 43 F. Supp. 3d 1322, 1325 (S.D. Fla. 2014) ("A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a

complaint."); *Johnson Outdoors Inc. v. Navico, Inc.*, 774 F. Supp. 2d 1191, 1195 (M.D. Ala. 2011) (applying *Iqbal* standard to examine a motion to dismiss counterclaims). A claim is facially plausible when the claimant pleads "factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Id.* (citation omitted). The allegations must establish "more than a sheer possibility" that the opposing party acted unlawfully. *Iqbal*, 556 U.S. at 678; *see Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. FACTUAL BACKGROUND

Belevich, a Russian citizen and legal permanent resident of the United States, filed this action against his wife Kuznitsnyna and Kuznitsnyna's daughter, Thomas. Docs. 25 ¶¶ 1-8; 1 ¶¶ 1-8. Kuznitsnyna and Thomas, both of whom are United States citizens, jointly sponsored Belevich's immigration to the United States by co-signing and filing an I-864 Affidavit of Support on his behalf pursuant to § 213 of the INA, 8 U.S.C. § 1183a. Docs. 25 ¶¶ 18-20; 1 ¶¶ 18-20. An affidavit of support is "executed by a sponsor of the alien as a contract . . . in which the sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty level during the

period in which the affidavit is enforceable." 8 U.S.C. § 1183a(a)(1)(A). Notably, the affidavit does not terminate on divorce, docs. 33 ¶ 12; 1 ¶ 12, and it lasts until the alien becomes a naturalized citizen or "has worked 40 qualifying quarters of coverage as defined under title II of the Social Security Act." 8 U.S.C. § 1183a(a)(2)–(3).

The Department of Homeland Security ultimately granted Belevich a visa that allowed him to immigrate to Alabama in 2012. Docs. 25 ¶¶ 6, 20; 1 ¶¶ 6, 20. Once in Alabama, Belevich worked various jobs, including a full-time position as an auto mechanic, and contributed to his and Kuznitsnyna's finances until late 2014. Docs. 25 ¶¶ 24-25; 1 ¶¶ 24-25. Subsequently, Kuznitsnyna filed for divorce and obtained a protection from abuse order against Belevich. Doc. 6 at 2.

In the present action, Belevich claims that the Defendants have breached their contractual obligations under the I-864 Affidavit of Support and requests specific performance, compensatory damages, and damages for intentional infliction of emotional distress. Doc. 1 at 7-9. In support of his claims, Belevich makes several contested factual allegations: (1) that, in late 2014, he suffered a heart attack and subsequently lost his job as an auto mechanic. *Id*. ¶ 26; (2) that, shortly after losing his job, he temporarily traveled to Russia to care for his ailing mother. *Id*. ¶ 28; and (3) that Thomas sought to prevent Belevich's return to the United States by cancelling his credit card, cell phone, and return ticket, and that

Thomas also emptied his retirement accounts and liquidated his remaining Russian assets without his knowledge. *Id*. ¶ 29. These events purportedly caused Belevich to suffer a second heart attack. *Id*. ¶ 30. Allegedly relying on borrowed money, Belevich purchased a ticket and returned to the United States in October 2015. *Id*. ¶ 32. However, since his return, Kuznitsnyna has refused to let Belevich return to their home or to retrieve his personal property, and the Defendants have not fulfilled their obligations under the I-864 Affidavit of Support, forcing Belevich to rely on government benefits and charity. *Id*. ¶¶ 33-38.

In their answer and amended answer, the Defendants assert counterclaims for extortion, misrepresentation, fraud, and conversion. Docs. 23, 25. Basically, the Defendants allege that Belevich: (1) threatened Kuznitsnyna that, unless she paid him $10,000, he would attempt to enforce or otherwise use the I-864 Affidavit of Support against her and Thomas. Doc. 25 ¶ 56; (2) falsely represented to the Defendants that he had suffered a heart attack, in order to obtain money from Thomas and as part of his plan to dissolve his marriage with Kuznitsnyna. *Id*. ¶ 57; and (3) knowingly and falsely represented to U.S. Customs and Border Patrol on his return from Russia in 2015 that he was domiciled in the United States, and purportedly did so to prevent the agency from concluding that he had abandoned his status as a legal permanent resident and to enable his return to the United States to enforce the I-864 Affidavit of Support. *Id*. ¶¶ 58-59. Presently before the court is

Belevich's motion to dismiss the counterclaims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 29.

### III. ANALYSIS

The court must determine initially whether to grant the Defendants leave to amend their answer a second time. Rule 15 only permits a party one opportunity to amend a pleading as a matter of course. *See* Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleading once as a matter of course . . ."); *Logue v. Patient First Corp.*, 246 F. Supp. 3d 1124, 1126-27 (D. Md. 2017) ("[*O*]*nly one* opportunity is afforded by Rule 15 to amend any pleading as a matter of course." (emphasis in original)). Consequently, the Defendants are required to obtain either Belevich's written consent or leave to amend their answer a second time, *see* Fed. R. Civ. P. 15(a)(2), which the Defendants failed to do. Here, however, the second amended answer would only add the word "falsely" to the Defendants' first misrepresentation claim and correct minor grammatical errors and omissions in their initial counterclaims, doc. 33 at 5-6. Therefore, the court will allow the amendment.

Turning now to the motion to dismiss, in their second amended answer, doc. 33, the Defendants allege five counterclaims against Belevich: extortion, two claims of misrepresentation, fraud, and conversion. Belevich contends that each claim fails to state a claim on which relief can be granted. The court agrees.

### A. Extortion

Belevich challenges the extortion counterclaim, contending that Alabama does not recognize a civil action for extortion and, alternatively, that his alleged conduct does not constitute extortion under Alabama or federal law. The court agrees with the alternate contention—specifically, although Alabama Code § 6-5-370 permits a claimant to commence a civil action, absent prosecution, "[f]or any injury, either to person or property, amounting to a felony," *see Preskitt v. Lyons*, 865 So. 2d 424, 428-29 (Ala. 2003) (quoting Ala. Code § 6-5-370), the claim requires the showing of an injury equivalent to the felony of extortion. In other words, to plead a proper claim for extortion requires, as defined in the Alabama Code, that the defendant "knowingly obtain[ed] by threat control over the property of another, with intent to deprive him of the property." Ala. Code §§ 13A-8-13; 13A-8-14; 13A-8-15.[1] Here, however, the Defendants have failed to allege any facts indicating that Belevich "obtained . . . control" over Kuznitsnyna's or Thomas' money or property, a necessary element of felony extortion under Alabama law. *See* doc. 33 ¶ 56; *Feldman v. American Dawn, Inc.*, 849 F.3d 1333,

---

[1] The Alabama Criminal Code distinguishes between first- and second-degree extortion. Ala. Code §§ 13A-8-14; 13A-8-15. Attempted extortion in the first degree—which requires a threat to cause physical harm to, or physical confinement or restraint of, another person—is also classified as a felony. *See id.* §§ 13A-4-2; 13A-8-1(14)(a), (c); 13A-8-14; *Preskitt*, 865 So.2d at 429-30. However, the Defendants have not alleged that Belevich attempted to threaten to cause physical harm, confine, or restrain another person, and thus they have not stated an injury equivalent to first-degree attempted extortion. *See* doc. 33 ¶ 56.

1339 (11th Cir. 2017) ("[A party] must plausibly allege all the elements of the claim for relief."). As such, their state law extortion claim fails.

Similarly, their federal claim fails as well. Under the Hobbs Act, the federal statute criminalizing extortion, a conviction requires proof of both extortion and interference with interstate commerce. *See United States v. Bornscheuer*, 563 F.3d 1228, 1236 (11th Cir. 2009) (citing 18 U.S.C. § 1951(a)). Extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). The Defendants have not alleged any facts that state an injury equivalent to a felony under federal law or any interference with interstate commerce. Moreover, because a "bad-faith threat to sue," by itself, cannot constitute the requisite "wrongful" act under the Hobbs Act, the Defendants' allegation that Belevich threatened to "use . . . or attempt to enforce" the I-864 Affidavit of Support is insufficient to allege extortion. *See United States v. Pendergraft*, 297 F.3d 1198, 1205-07 (11th Cir. 2002) (finding that defendants' threat to litigate was not "wrongful" under the Hobbs Act even though they had no lawful claim to the money at issue and had filed false affidavits); doc. 33 ¶ 56. In short, the Defendants' allegations do not state a plausible claim for extortion or any other cognizable claim.

### B. Misrepresentation I

Belevich also contends that the Defendants' first misrepresentation claim, doc. 33 ¶ 57, fails to satisfy the pleading standards of Rules 8(a) and 9(b). Under Alabama law, a misrepresentation claim consists of: "1) a misrepresentation of material fact, 2) made willfully to deceive, recklessly, without knowledge, or mistakenly, 3) which was reasonably relied on by the plaintiff under the circumstances, and 4) which caused damage as a proximate consequence." *Bryant Bank v. Talmage Kirkland & Co.*, 155 So. 3d 231, 238 (Ala. 2014). The misrepresentation claim must also satisfy the particularity requirements of Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").[2] This means that the claim must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the

---

[2] Although the Defendants plead some of their claims as misrepresentation rather than fraud, *see* doc. 33 ¶¶ 57-58, Alabama statutory law indicates that all misrepresentation claims are claims of "legal fraud." *See* Ala. Code § 6-5-101 ("Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."). Moreover, the Defendants allege that Belevich made intentionally false representations. *See* doc. 33 ¶¶ 57, 58. Accordingly, the Defendants' misrepresentation claims must satisfy Rule 9(b)'s particularity requirements for fraud. *See Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 951 (11th Cir. 2014) (holding that Rule 9(b) applied to negligent misrepresentation claims because such claims sounded in fraud under Florida law); *Bodie v. Purdue Pharma Co.*, 236 F. App'x 511, 524 (11th Cir. 2007) (noting that a plaintiff alleging fraud or misrepresentation must satisfy Rule 9(b)).

statement; (3) the content and manner in which these statements misled the [claimants]; and (4) what the [opposing party] gained by the alleged fraud." *Cigna Corp.*, 605 F.3d at 1291 (citation omitted). "This Rule 'serves an important purpose in fraud actions by alerting [opposing parties] to the precise misconduct with which they are charged' and protecting [opposing parties] 'against spurious charges of immoral and fraudulent behavior.'" *Brooks*, 116 F.3d at 1370-71 (citations omitted).

The first misrepresentation claim alleges that Belevich intentionally misrepresented that he had experienced a heart attack in order to obtain an unspecified amount of money from Defendant Thomas. *See* doc. 33 ¶ 57. The Defendants have not, however, articulated the precise statement or misrepresentation that Belevich allegedly made, or when, where, or how Belevich made this misrepresentation and what money Thomas gave Belevich in connection with his misrepresentation. *See Mizzaro*, 544 F.3d at 1237 (finding that Rule 9(b) requires pleading "the who, what, when, where, and how of the allegedly false statements . . ."); *Pucci v. Carnival Corp.*, 146 F. Supp. 3d 1281, 1290-91 (S.D. Fla. 2015) (finding plaintiffs' allegations that cruise company made misrepresentations through marketing materials and employee statements, without identifying exactly when these misrepresentations occurred, lacked sufficient "temporal precision" under Rule 9(b)). Furthermore, given that the complaint

pleads that Belevich suffered two separate heart attacks, doc. 1 ¶¶ 26, 30, both of which the Defendants dispute, doc. 33 ¶¶ 26, 30, it is unclear whether the Defendants' sparse allegations refer to events pertaining to one or both of the alleged heart attacks. In the absence of the particular circumstances of this claim, the Defendants' allegations fall short of the heightened pleading requirements of Rule 9(b), and fail to state a claim that is plausible. *See Brooks*, 116 F.3d at 1370-71 ("Rule 9(b) must be read in conjunction with Rule 8(a) . . .").

### C. Misrepresentation II and Fraud

Belevich also contends that the Defendants' second misrepresentation claim, doc. 33 ¶ 58, and fraud claim, doc. 33 ¶ 59, fail to satisfy Rule 8(a)'s plausibility standard and Rule 9(b)'s particularity requirements.[3] This claim is based on the Defendants' contention that Belevich purportedly lied to Customs and Border Patrol when he represented on his return after traveling to Russia, allegedly to visit his sick mother, that he is domiciled in the U.S. *See* doc. 33 ¶¶ 58-59; doc. 1 ¶¶ 28-33. Based on Belevich's complaint, the undersigned is skeptical of the Defendants'

---

[3] Under Alabama law, a "fraud claim" appears to consist of essentially the same elements as a claim of intentional or reckless misrepresentation. *See*, *e.g.*, *Patten v. Alfa Mut. Ins. Co.*, 670 So. 2d 854, 856 (Ala. 1995) ("The essential elements of a fraud claim are: (1) misrepresentation of a material fact; (2) made willfully to deceive, or recklessly without knowledge; (3) which was justifiably relied upon by the plaintiff under the circumstances; and (4) which caused damage as a proximate consequence." (citation omitted)). Moreover, the Defendants' second misrepresentation claim and fraud claim are based on the same factual allegations. *See* doc. 33 ¶¶ 58-59; doc. 34 at 4. Accordingly, the court analyzes the Defendants' second misrepresentation and fraud claims together.

allegation that Belevich knowingly and intentionally made a misrepresentation about his domicile, given that his alleged reason for traveling to Russia was to visit his mother, rather than to permanently move back. In any event, the Defendants have not articulated how Belevich even made this misrepresentation to Customs and Border Patrol or why his statement is false.

Second, the Defendants have not adequately alleged under Rules 9(b) and 8(a) how this misrepresentation harmed them, except to state that Belevich's purported misrepresentation about his domicile enabled him to enter the U.S. so that he could enforce the I-864 affidavit of support. Doc. 33 ¶¶ 58-59. But Belevich's trip to Russia did not absolve the Defendants' of their support obligations. Under federal immigration regulations, Thomas' support obligations under the I-864 terminate if Belevich "ceases to hold the status of an alien lawfully admitted for permanent residence and departs the United States." 8 C.F.R. § 213a.2(e)(2)(i)(C); *Erler v. Erler*, 824 F.3d 1173, 1176-77 (9th Cir. 2016) (listing the five ways in which I-864 obligations terminate). Critically, "if the sponsored immigrant has not <u>abandoned</u> permanent resident status, executing the form designated by USCIS for recording such action [sic] this provision will apply only if the sponsored immigrant is found in a removal proceeding to have abandoned that status while abroad." 8 C.F.R. § 213a.2(e)(2)(i)(C) (emphasis added). The Defendants have not alleged that Belevich executed any USCIS-designated form

abandoning his permanent resident status, that there was a removal proceeding initiated against Belevich, or that USCIS had issued a finding that Belevich had abandoned his status while in Russia.[4] Consequently, based on these pleadings, it is not clear how Belevich's statement as to his domicile is even a misrepresentation or how it could have harmed the Defendants.

### D. Conversion

Finally, Belevich contends that the Defendants have failed to plausibly allege the elements of a conversion claim. Doc. 29 at 4-5. *See Ex Parte Talbott*, 215 So. 3d 541, 549 (Ala. 2015) (citation omitted) (requiring that a claimant must show "a wrongful taking or a wrongful detention or interference or an illegal use or misuse of his or her property."). The Defendants allege that Belevich obtained "monies, services, and other economic benefits" from the Defendants by implementing a "plan to force dissolution of [his] marriage" to Kuznitsnyna. Doc. 33 ¶ 60. These allegations, without more, do not state any action by Belevich that amounts to the "*wrongful* exercise of dominion over" or "illegal misuse" of the Defendants' property required for a claim of conversion.[5] *See Horne v. TGM*

---

[4] Indeed, the Defendants admit in their amended answer that Belevich "is a legal permanent resident of the United States . . ." Doc. 33 ¶ 6; doc. 1 ¶ 6.

[5] The Defendants contend in their responsive brief that the alleged conversion is Belevich's "illegal misuse" of the I-864 Affidavit of Support by attempting to cause the dissolution of his marriage to Kuznitsnyna, by lying about his heart attack, and by committing fraud while entering the United States. Doc. 34 at 5. However, this attempt to shoehorn factual and conclusory allegations from the

*Associates, L.P.*, 56 So. 3d 615 (Ala. 2010) (citation omitted) (emphasis in original) ("The gist of [conversion] is the *wrongful* exercise of dominion over property in exclusion or defiance of a plaintiff's rights . . ."); *Martin v. Luckie & Forney, Inc.*, 549 So. 2d 18, 19 (Ala. 1989) ("[T]he bare possession of property without some wrongful act in the acquisition of possession, or its detention, and without illegal assumption of ownership or illegal user or misuser, is not conversion."). Moreover, the Defendants fail to identify any specific property that Belevich wrongfully acquired or converted. *See Schaeffer v. Poellnitz*, 154 So. 3d 979, 988 (Ala. 2014) (citation omitted) (noting that the "converted" property must be "specific personal property . . . to which, at the time of the conversion, the [claimant] had a general or specific title and of which the [claimant] was in actual possession or to which he was entitled to immediate possession"); *Newson v. Protective Industrial Ins. Co. of Alabama*, 890 So. 2d 81, 88 (Ala. 2003) ("Generally, an action for conversion of money will not lie unless the money is specific and capable of identification." (internal quotations and citation omitted)).

---

preceding counts for misrepresentation and fraud into an additional claim of conversion exemplifies a form of "shotgun pleading" that is insufficient to state a claim. *See Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320-23 (11th Cir. 2015) ("The most common type [of shotgun pleading] . . . is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.").

Consequently, the Defendants' sparse factual allegations fail to plausibly state a claim for conversion.

### IV. CONCLUSION AND ORDER

In sum, the Defendants have failed to state a counterclaim on which relief is plausible, and Belevich's motion to dismiss the Defendants' amended counterclaims, doc. 29, is **GRANTED**. Accordingly, the Defendants' amended counterclaims, doc. 33 ¶¶ 56-60, are **DISMISSED WITHOUT PREJUDICE**.

**DONE** the 7th day of November, 2018.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE